**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SID TERRELL JONES,

    Petitioner,                             CASE NO. 2:12-13864
                                                    HONORABLE PAUL D. BORMAN
v.                                         UNITED STATES DISTRICT JUDGE

MARY BERGHUIS,

    Respondent.

_____/

**OPINION AND ORDER DENYING (1) THE PETITION FOR WRIT OF HABEAS CORPUS, (2) A CERTIFICATE OF APPEALABILITY, AND (3) LEAVE TO APPEAL IN FORMA PAUPERIS**

Sid Terrell Jones, ("petitioner"), confined at the Brooks Correctional Facility in Muskegon Heights, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for first-degree felony murder, Mich. Comp. Laws § 750.316, and being a fourth felony habitual offender, Mich. Comp. Laws § 769.12. For the reasons stated below, the application for a writ of habeas corpus is DENIED WITH PREJUDICE.

**I.  BACKGROUND**

Petitioner was convicted following a jury trial in the Kent County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

On March 27, 2008, at approximately 5:00 a.m., the body of Janeanne Lusk was found in the parking lot of Viking Truck on Linden Street in Wyoming, Michigan. Lusk was a prostitute. Lusk's body contained three stab wounds: a superficial wound behind her right ear, one to her right arm, and one in the upper portion of the left side of her abdomen. Dr. Stephen Cohle, the forensic pathologist, testified that because there was a lack of blood from Lusk's wound to her abdomen, he opined that the wound to her abdomen was inflicted when she was nearly dead. A tissue was discovered in Lusk's vaginal area.

Officer Paul Pena, who is a police officer with the city of Wyoming, testified that he was one of the first officers to respond to the call that a body has been discovered. Officer Pena noticed a used condom near the victim, a broken cellphone, a lens from a pair of glasses, two shoes, and a cigarette butt on the scene. A second condom and a pair of glasses with the lens missing were also found at the scene. South of where the body was discovered, there was pooling of blood and some blood spatter, as well as what appeared to be a trail of blood leading to the southwest around the building. On the southwest corner of the building, there was a pool of blood and broken glass, which appeared to be from a vehicle. There was blood in the glass. There was also blood smeared on the ground at that location. In addition, there was a trail of blood leading from the glass to a dumpster. Officer Kevin Meaney, who was a police officer with the city of Wyoming and who also responded to the scene, testified that he thought that the glass and blood evidence reflected a struggle or that someone was dragged.

Jacob Gomez, who worked for Viking Truck, recalled seeing a condom on March 26, 2008, in the parking lot. He indicated that the condom was not cleaned up. Gomez was aware that Viking Truck employees would smoke in the lot. Kenneth Horton, who also worked at Viking Truck, testified that on March 27, 2008, he observed the "huge quantity" of glass on the ground in the lot and indicated that it had not been there the previous day.

Laura Dykstra was a prostitute who testified that on March 25, 2008, she was working the streets when defendant Jones picked her up in a sport utility vehicle. They discussed having sexual intercourse. Dykstra and Jones arrived at the Viking Truck parking lot around "eleven o'clock or later." Jones told Dykstra that he had "$43 whole dollars," and Dykstra replied "[t]hat's fine." They both got into the back seat and had sexual intercourse using a condom. Dykstra did not see what Jones did with the condom afterwards, but she assumed that he threw it on the ground in the parking lot. They both got back into the front seat. Dykstra was subsequently getting dressed when Jones told her to get out. Dykstra saw Jones holding what appeared to be a switchblade knife. When Dykstra got out of the vehicle, she noted the license plate number as being "BCE 1403." Jones drove away. Dykstra did not call the police.

Dykstra was in the Kent County jail on March 27, 2008. After Deputy Melissa

Frederick, who worked at the Kent County jail, was informed that a prostitute was killed the night before, she told Dykstra that she was lucky that she was not the person who was killed. Dykstra then informed Deputy Frederick about what happened to her on the evening of March 25, 2008. Dykstra subsequently found out that Lusk was the prostitute who was killed. Dykstra knew Lusk and smoked crack cocaine with her on March 25, 2008. Dykstra identified Jones in a photographic lineup and later at trial. Jones was charged with the felonious assault of Dykstra, but that charge was dismissed.

The DNA on both condoms found at the scene matched Jones's DNA. However, the tissue contained DNA of an unidentified male. The DNA of this unidentified male was also found on the outside of one of the condoms. David Hayhurst, who is a forensic scientist, theorized that most likely an unidentified male deposited sperm in Lusk's vaginal tract and the DNA of that male was then transferred onto the outside of the condom when another male was wearing the condom while later having sexual intercourse with Lusk. Upon a search of Jones's home, police found condoms that were the same type of condoms that they had found at the crime scene.

Jones's fiancée owned a Ford Escape. The license plate number on Jones's fiancée's vehicle was BCE 4103. Jones's fiancée indicated that Jones was driving her Ford Escape on the evenings of March 25, 2008, and March 26, 2008. Jones picked his fiancée up when she got out of work a few minutes after 12:00 a.m. on March 26, 2008, and March 27, 2008. When Jones picked up his fiancée at work a few minutes after 12:00 a.m. on March 27, 2008, she noticed that the front passenger window was broken on her Ford Escape. Jones indicated that "some kid" broke the window by throwing a rock at it.

Jones testified at trial. Jones admitted to picking up prostitutes while driving his fiancée's vehicle. He also admitted to having sexual intercourse with Dykstra on March 25th. Jones indicated that he paid Dykstra $20, but she wanted more money. Jones asserted that Dykstra indicated that that was why she "don't date ns." Feeling insulted, Jones stopped the vehicle and told her to get out. According to Jones, Dykstra told him that she was not going to get out, so Jones said, "You're going to get the f—k out right now." Dykstra then got out of the vehicle. Jones denied pulling a knife on Dykstra. Jones argued during trial that Dykstra lied about him possessing a knife so that she could provide valuable information on the case and thus become a trustee at the jail.

Jones admitted that he picked up Lusk on the evening of March 26th. He also admitted to having sexual intercourse with Lusk, using a condom, and discarding it. In addition, he admitted that the sexual intercourse with Lusk occurred at the same location as it did with Dykstra. Jones indicated that after he had sexual intercourse with Lusk, she got out of the vehicle and was standing outside making a telephone call on her cellular telephone. He subsequently rolled down his window and told her

3

> that he only had $15. Jones asserted that Lusk said "that's b——s–t" and yanked the vehicle's door, causing the window to smash. Jones admitted that a surveillance videotape showed him leaving the scene at 11:38 p.m. Jones then picked up his fiancée at work. He admitted that he lied about how the window was broken, but denied stabbing Lusk.
>
> During trial, the prosecutor questioned an evidence technician with the Wyoming police department. She testified that she took photographs of Jones for the primary purpose of documenting whether he had any injuries and also to document Jones's stature. The technician indicated that when taking these photographs, only six days after Lusk was murdered, she did not note any injuries to Jones's body. During cross-examination, the technician confirmed that she did not notice any recent cuts, abrasions, scratches, bruises, or anything that appeared to have been the result of a scuffle or fight with another person.

*People v. Jones,* No. 293773, pp. 1-3 (Mich.Ct.App. July 14, 2011).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 490 Mich. 913, 805 N.W. 2d 206 (2011)(Table).

Petitioner filed a post-conviction motion for relief from judgment, which was denied by the trial court. *People v. Jones,* No. 08-11625-FC (Kent County Circuit Court, September 12, 2012).

While petitioner's post-conviction motion was pending in the state courts, petitioner filed a petition for writ of habeas corpus, which was held in abeyance pending the completion of state postconviction proceedings by petitioner. The Court also administratively closed the case. *Jones v. Rivard*, No. 2:12-CV-13864, 2012 WL 4356774 (E.D. Mich. September 24, 2012).

The Michigan appellate courts denied petitioner's post-conviction appeal. *People v. Jones*, No. 315230 (Mich.Ct.App. July 5, 2013); *lv. den.* 495 Mich. 913, 840 N.W.2d 324 (2013)(Table).

On March 18, 2014, the Court reopened the petition to the Court's active docket, amended the caption, and permitted petitioner to file an amended petition. Petitioner seeks

4

habeas relief on the following grounds:

>   I. Conviction obtained by a violation of privilege against self-incrimination.
>
>   II. The defendant was denied a fair trial because of unfounded assertions of perjury by the prosecutor.
>
>   III. The prosecutor exceeded the bounds of Mich. R. Evid. 609.
>
>   IV. The prosecution referred to its witness as a victim throughout trial and asked the jury to convict on that witness's behalf.
>
>   V. The prosecutor's closing arguments denied the defendant a fair trial.
>
>   VI. Ineffective assistance of trial counsel.
>
>   VII. The cumulative effect of errors denied the petitioner a fair trial.
>
>   VIII. Ineffective assistance of appellate counsel.

## II.  STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable

5

application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III. DISCUSSION

**A. Claim # 1. The claim involving references to petitioner's exercise of his right to remain silent.**

Petitioner initially claims that the prosecutor impermissibly commented on his Fifth Amendment right against self-incrimination when he asked petitioner whether he had told his story to the police after being arrested. (Tr. 6/29/09, p. 140). Defense counsel immediately objected to the line of questioning. (*Id.,* pp. 140-41). The trial judge sustained the objection, noting that petitioner had "a constitutional right to remain silent in the face of any

interrogation." (*Id.,* p. 141).

The Michigan Court of Appeals rejected petitioner's claim:

Here, defense counsel objected to the prosecutor questioning Jones about why he had not told the detectives his version of the events. The trial court sustained the objection, noting in front of the jury that Jones had a constitutional right to remain silent in the face of any interrogation. Based on the foregoing, there was no *Doyle* violation in this case because Jones's silence was not submitted to the jury.

*Jones,* Slip. Op. at p. 9.

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). However, a single isolated reference to a defendant's exercise of his right to remain silent does not deprive a criminal defendant of a fair trial when the prosecution does not use the defendant's silence to prove his guilt. *U.S. v. Weinstock*, 153 F.3d 272, 280-81 (6th Cir. 1998); *See also U.S. v. Robinson,* 357 F. Appx. 677, 683 (6th Cir. 2009)(both citing *Greer v. Miller,* 483 U.S. 756 (1987)).

In the present case, there was only one isolated reference to petitioner's refusal to speak with the police. The prosecutor never repeated this reference during trial. Because there was only one isolated reference to petitioner's exercise of his right to remain silent, and this silence was never exploited by the prosecutor, petitioner is not entitled to habeas relief on his first claim.

**B. Claims # 2, 3, 4, and 5. The prosecutorial misconduct claims.**

Petitioner contends in his second, third, fourth, and fifth claims that he was denied a fair

trial because of prosecutorial misconduct.[1]

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87)).

In his second claim and again as part of his fifth claim, petitioner argues that the prosecutor committed misconduct during closing arguments when he attacked petitioner's credibility by arguing that petitioner had committed perjury because he was present during trial

---

[1] Respondent contends that petitioner's prosecutorial misconduct claims are procedurally defaulted because petitioner failed to preserve these issues by objecting at trial. As part of his sixth claim, petitioner alleges that trial counsel was ineffective for failing to object to the misconduct. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

and had access to the police reports. Although petitioner does not specify the comments in his petition, in his Standard 4 *pro per* supplemental brief that he filed with the Michigan Court of Appeals, petitioner refers to comments made by the prosecutor, in which the prosecutor indicated that petitioner had sat through the trial and had listened to all of the witnesses, providing him the opportunity to "weave a story that meshed with the facts." (Tr. 6/30/09, pp. 7-8). [2] Petitioner contends that the remarks infringed upon his right to be present at trial.

Once a defendant takes the stand, he or she is subject to cross-examination which impeaches his or her credibility just like any other witness. *Jenkins v. Anderson*, 447 U.S. 231, 235-36 (1980). When a defendant assumes the role of a witness, the rules that generally apply to other witnesses--rules that serve the truth-seeking function of the trial--are generally applicable to him or her as well. *Portuondo v. Agard*, 529 U.S. 61, 69 (2000)(quoting *Perry v. Leeke*, 488 U.S. 272, 282 (1989)). The Supreme Court has recognized that unless prosecutors are allowed "wide leeway in the scope of impeachment cross-examination," some defendants would be "able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." *Doyle v. Ohio*, 426 U.S. at 617, fn. 7.

In *Portuondo*, the United States Supreme Court held that a prosecutor's comments during summation, which called attention to the fact that the defendant had an opportunity to hear other witnesses testify and to tailor his testimony, did not unlawfully burden his right to be present at trial, to be confronted with witnesses, or to testify in his own behalf, and thus, did not violate due process. In so ruling, the Supreme Court noted that the prosecutor's comments concerned the defendant's credibility as a witness, and were thus in accord with the Supreme

---

[2] *See* Standard 4 Appellant's Brief, p. 18 [Dkt. # 12-16].

9

Court's longstanding rule that when a defendant takes the stand, "his credibility may be impeached and his testimony assailed like that of any other witness." *Id.* at 69 (quoting *Brown v. United States*, 356 U.S. 148, 154 (1958)). Accordingly, the prosecutor's statements did not violate petitioner's right to be present at trial.

To the extent that petitioner claims that the prosecutor's remarks unfairly accused him of being a liar, he would not be entitled to relief. The prosecutor's comments were not improper because they reflected reasonable inferences from evidence adduced at trial, and thus it was not improper for the prosecutor to suggest that petitioner was lying. See *United States v. Johnson*, 169 F. Appx. 946, 950 (6th Cir. 2006).

In his third claim, petitioner contends that the prosecutor exceeded the bounds of M.R.E. 609 by using petitioner's prior convictions to show petitioner's propensity or inclination for violence.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003).

In his fourth claim, petitioner contends that the prosecutor committed misconduct by referring to Dykstra as the "surviving" or "living" victim and asking the jury to convict petitioner on her behalf.

It was not improper for the prosecutor to refer to Dykstra as a victim in this case. *See Garcia-Dorantes v. Warren,* 769 F. Supp. 2d 1082, 1105 (E.D. Mich. 2011)(state court's determination that prosecutor's references to complainants as "victims" during murder prosecution did not violate petitioner's due process rights was not contrary to, and did not involve unreasonable application of, clearly established federal law, and thus did not warrant federal habeas relief).

In his fifth claim, petitioner initially argues that the prosecutor committed misconduct by vouching for Dykstra's credibility. Although petitioner does not specify which comments were objectionable, his appellate counsel in his brief on appeal referenced two comments made by the prosecutor. In the first comment, the prosecutor told the jurors that although Dykstra had been using narcotics, her testimony was accurate in every single detail. In the second statement, the prosecutor told the jurors to ask themselves what Dykstra had to gain by testifying, because she was already in jail. [3]

The Michigan Court of Appeals rejected petitioner's claim:

Jones argues that the prosecutor committed misconduct by vouching for Dykstra's credibility. A prosecutor is not allowed to vouch for the credibility of his witness by inferring that he has special knowledge that the witness is testifying truthfully. But a prosecutor may argue from the facts whether a witness is credible. And "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." Therefore, the prosecutor's

---

[3] Appellant's Brief on Appeal, p. 29 (citing to Tr. VII (6/30/09), pp. 7-8, 40)[This Court's Dkt. # 12-16].

>  comments were not improper. They did not constitute improper vouching because the prosecutor did not assert special knowledge that Dykstra was testifying truthfully. In context, the prosecutor was arguing that the jury had to judge credibility and should base its judgment on the facts and circumstances. Further, the prosecutor's comments that Dykstra had nothing to gain by testifying related to whether she was biased or had an interest in the case and, thus, were highly relevant to credibility.

*Jones,* Slip. Op., p. 5-6 (internal footnotes omitted).

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell,* 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the record evidence. *Id.* The test for improper vouching for a witness is whether the jury could reasonably believe that the prosecutor was indicating a personal belief in the witness' credibility. *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F.3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F.3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute reversible error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See*

12

*United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated. An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F.3d 441, 474 (6th Cir. 2006). Moreover, the prosecutor's comments about Dykstra's credibility did not amount to improper vouching, because the prosecutor was merely noting the consistency between her testimony and other evidence and emphasizing that she had no reason to lie. *See United States v. Jackson,* 473 F.3d 660, 672 (6th Cir. 2007); *Joseph v. Coyle,* 469 F.3d at 474. Finally, even if these statements amounted to improper vouching, they did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by these brief statements. *See Wilson v. Mitchell,* 250 F.3d 388, 398 (6th Cir. 2001).

Petitioner next claims that the prosecutor appealed to the jury's sympathy for Dykstra by arguing that she had been poorly treated as a material witness during her incarceration.

Petitioner is not entitled to habeas relief on his claim. First, the prosecutor's comment, even if it was an attempt to invoke sympathy with the jury, would not entitle petitioner to habeas relief because the remark was relatively isolated, was not extensive, and was only a small part of the closing argument that focused on summarizing the evidence. *Byrd,* 209 F.3d at 532. This portion of petitioner's claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision. (Tr. 6/30/09, pp. 48-49). *See Cockream v. Jones,* 382 F. Appx. 479, 486 (6th Cir. 2010). Finally, even if the prosecutor's appeals to the jury's emotions or sympathies was improper, this would

13

be insufficient to render the trial fundamentally unfair, since it was likely that the nature of the crime itself would have produced juror sympathy even before the prosecutor made any of these comments. *See Millender v. Adams,* 187 F. Supp. 2d 852, 875-76 (E.D. Mich. 2002)(citing *Walker v. Gibson*, 228 F.3d 1217, 1243 (10th Cir. 2000)).

Petitioner next contends that the prosecutor committed misconduct by castigating trial counsel. Petitioner, however, provides no facts in support of this claim or his related ineffective assistance of appellate counsel claim, *infra,* nor did he provide the state court with any facts in support of his prosecutorial misconduct claim or related ineffective assistance of appellate counsel claim in his post-conviction motion. Conclusory allegations of prosecutorial misconduct fail to state a claim upon which habeas relief can be granted. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 710 (E.D. Mich. 2004). Because petitioner's remaining prosecutorial misconduct claim is conclusory or unsupported, he is not entitled to habeas relief.

### C. Claim # 6 and # 8. The ineffective assistance of counsel claims.

In his sixth and eighth claims, petitioner claims that he was denied the effective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. In other words, petitioner must overcome the presumption that,

under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792)). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F.3d 602, 617 (6th Cir. 2005).

In his sixth claim, petitioner contends that trial counsel was ineffective for failing to object to the prosecutorial misconduct that he complained of in his second through fifth claims.

To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle,* 271 F.3d 239, 245 (6th Cir. 2001). Because the Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F.3d 501, 528 (6th Cir.

15

2006). Petitioner is not entitled to habeas relief on his sixth claim.

In his eighth claim, petitioner contends that he was denied the effective assistance of appellate counsel.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner first contends that his appellate counsel was ineffective for failing to move for an evidentiary hearing on his claim that trial counsel had been ineffective for failing to object to the introduction of nude photographs of petitioner. Under Michigan law, a defendant can move for an evidentiary hearing, often known as a *Ginther* hearing, to develop an ineffective assistance of counsel claim. *See People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

Petitioner is not entitled to habeas relief on this claim for several reasons. First, appellate counsel's decision to raise the ineffective assistance of trial counsel claim without separately requesting an evidentiary hearing was a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F.2d 1276, 1280 (6th Cir. 1989).

Moreover, assuming that appellate counsel was ineffective for failing to proceed with a *Ginther* hearing, petitioner was not prejudiced by appellate counsel's failure to do so because the underlying ineffective assistance of trial counsel claim was meritless. On direct appeal, the

Michigan Court of Appeals ruled that trial counsel was not ineffective for failing to object to the admission of these photographs:

> It is well established that defense counsel's "[d]ecisions regarding what evidence to present ... are presumed to be matters of trial strategy." Here, defense counsel likely wanted the photographs admitted into evidence to show that Jones did not have any cuts, scrapes, or other injuries that might indicate that he was involved in a struggle with Lusk and thus killed her. Therefore, it is reasonable to presume that it was trial strategy for defense counsel not to object to their admission as a matter of defense strategy. And we will not second-guess defense counsel on matters of trial strategy.
>
> Moreover, we disagree with Jones's contention that the photographs were unnecessarily cumulative in light of testimony that Jones did not have any injuries on his body. Photographs are more effective than an oral description and thus photographs were not inadmissible simply because there was testimony reflecting that Jones did not have any injuries on his body. Accordingly, we conclude that Jones has failed to meet his burden of demonstrating that defense counsel's performance fell below an objective standard of reasonableness.

*Jones,* Slip. Op., p. 8 (internal footnotes omitted).

Under *Strickland*, a court must presume that decisions by counsel as to whether to call or question witnesses or present evidence are matters of trial strategy. *See Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Trial counsel may very well have likely wanted the photographs of petitioner admitted to show that he did not have any injuries on his body, in order to call into question the prosecution's theory that petitioner had struggled with the murder victim. Trial counsel was thus not ineffective in failing to object to the admission of the photographs. In light of the fact that petitioner's ineffective assistance of trial counsel claim was without merit, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to conduct a *Ginther* hearing. *See e.g. Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other grds,* 589 F.3d 302 (6th Cir. 2009).

Petitioner next contends that appellate counsel was ineffective for failing to offer any

17

facts in support of his claim that the prosecutor committed misconduct by castigating defense counsel. As mentioned when discussing petitioner's prosecutorial misconduct claim, *supra,* petitioner has offered no facts to establish that the prosecutor made improper comments about defense counsel. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Because there is no indication that the prosecutor improperly disparaged trial counsel, petitioner has failed to show that appellate counsel was ineffective for failing to properly brief this issue. Petitioner is not entitled to relief on his sixth and eighth claims.

### D. Claim # 7. The cumulative errors claim.

Petitioner finally contends that he is entitled to relief on his cumulative errors claim.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief, because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). Petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id.*

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v.*

*McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because reasonable jurists would not find this Court's assessment of petitioner's claim to be debatable or wrong. *Johnson v. Smith,* 219 F. Supp. 2d 871, 885 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## IV.    CONCLUSION

Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus. The Court further **DENIES** a certificate of appealability and leave to appeal *in forma pauperis*.

**SO ORDERED.**

                                              s/Paul D. Borman
                                              PAUL D. BORMAN
                                              UNITED STATES DISTRICT JUDGE

Dated:  January 22, 2015

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 22, 2015.

                                        s/Deborah Tofil
                                        Case Manager